**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| SHANE SCOFIELD on behalf of himself and others similarly situated, | : : : | CIVIL ACTION FILE NO. |
| Plaintiff, | : : | |
| v. | : : : | **COMPLAINT – CLASS ACTION** |
| STEP UP MORTGAGE LLC and BLITZ SERVICES LLC | : : : | **JURY TRIAL DEMANDED** |
| Defendants. | : : | |
| _____/ | | |

Plaintiff Shane Scofield (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

## NATURE OF ACTION

1.      As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell

phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2.      This case involves a campaign by Step Up Mortgage LLC ("Step Up"), who hired Blitz Services LLC ("Blitz") to market mortgage services through unsolicited pre-recorded telemarketing calls without the prior express consent of the call recipients.

3.      Mr. Scofield received such a call and because these calls were transmitted using technology capable of generating thousands of similar calls per day, the Plaintiff sues on behalf of a proposed nationwide class of other persons.

## PARTIES

4.      Plaintiff Shane Scofield resides in Colorado.

5.      Defendant Step Up Mortgage LLC is a Michigan limited liability company, with a principal place of business in Flint, MI. It has a registered agent of United State Corporation Agents, Inc., 336 W. First St., Suite 113 in Flint, MI 48502.

6.      Defendant Blitz Services LLC is a California limited liability company. It has a registered agent of Jason Smith, 22642 Lambert St., Suite 407 in Lake Forest, CA 92630.

## JURISDICTION AND VENUE

7.     This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

8.     This Court has general jurisdiction over Step Up Mortgage because it resides in this District.

9.     This Court has specific personal jurisdiction over Blitz Services LLC because it agreed to provide its telemarketing services into this District for Step Up Mortgage and transferred phone calls into this District for Step Up Mortgage.

10.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because the TCPA violative conduct to Plaintiff was directed from this District.

## TCPA BACKGROUND

11.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls

12.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called

party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service…or any service for which the called party is charged for the call." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

13.     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

14.     The TCPA also makes it unlawful to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party. *See* 47 U.S.C. § 227(b)(1)(B).

15.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

16.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers, services for which the called party is charged for the call, and residential lines. Specifically, it ordered that:

4

[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

## FACTUAL ALLEGATIONS

17.     The defendants are each a "person" as the term is defined by 47 U.S.C. § 153(39).

18.     Step Up provides consumer mortgage services.

19.     However, Step Up acquires leads from Blitz Services, who engages in pre-recorded telemarketing in order to gather those leads.

20.     At no point prior to the telemarketing calls that Plaintiff received that led to this lawsuit, did the Plaintiff seek out or solicit information regarding the mortgage services promoted by Step Up.

21.     Plaintiff's telephone number, 970-XXX-1559, has been on the National Do Not Call Registry since 2003.

22.     Despite this, the Plaintiff received a pre-recorded telemarketing call

from Blitz Services on January 12, 2022.

23.     The recorded message stated:

> This is Brian, I know you get a ton of these calls but I have in
> my record here that we had spoken before about your mortgage
> and I wanted to reach out again we have the absolute lowest
> interest rates in the country we can beat anyone out there so we
> can definitely improve your mortgage payment we can even
> help people who have no documentable income and who have
> less than perfect credit. I'd really really love to talk with you as
> soon as possible and save you as much money as we can give
> me a call.

24.     The Plaintiff had never spoken to "Brian".

25.     To identify the caller, the Plaintiff contacted the number left in the

pre-recorded message.

26.     The Caller ID for the pre-recorded message was (720) 789-2288.

27.     Other individuals have complained about receiving pre-recorded calls

regarding "Mortgage". *See e.g.* https://lookup.robokiller.com/p/720-789-2288

(Last Visited February 21, 2022).

28.     There have been reports of over 2,200 such calls. *Id.*

29.     The recorded message complained of is the same as the one received

by the Plaintiff.

6

30.    Subsequently, the Plaintiff received a call from Steven Manger of Step Up Mortgage.

31.    Mr. Manger offered the consumer mortgage services offered by Step Up Mortgage.

32.    Mr. Manger explained that the Plaintiff's information came from Blitz Services.

33.    All class members, as defined below, have had their privacy invaded through receipt of the telemarketing calls.

### Step Up Mortgage's Liability and its Arrangement with Blitz Services

34.    For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

35.    On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for

violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

36. In that ruling, the FCC instructed that sellers such as Step Up Mortgage may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

37. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing call if the telemarketer "has apparent (if not actual) authority" to make the call.  28 FCC Rcd at 6586 (¶ 34).

---

[1]   *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

38.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

 FCC Rcd at 6592 (¶ 46).

39.     By engaging Blitz Services to make call on behalf of its agents to generate new business, Step Up Mortgage "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

40.     Moreover, Step Up Mortgage maintained interim control over Blitz Services' actions.

41.     For example, Step Up Mortgage controlled the states that it allowed Blitz Services to call.

42.     Step Up Mortgage instructed Blitz Services on what type of consumer mortgage information to secure for the lead.

43.     Step Up Mortgage also gave interim instructions to Blitz Services by providing the volume of calling and new customers it would purchase it would purchase.

44.     Step Up Mortgage also ratified Blitz Services conduct by accepting the benefits of Blitz Services' calling activity, including the business origination of the Plaintiff's information.

45.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information."  *Id.* at 6592-593 (¶ 46).  Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent."  *Id.* at 6593 (¶ 46).

## **Class Action Allegations**

46.     As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of

Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons

or entities similarly situated throughout the United States.

47.     The Class of persons Plaintiff proposes to represent is tentatively

defined as:

> All persons within the United States to whom: (a) Blitz Services and/or
> a third party acting on their behalf, made one or more non-emergency
> telephone calls; (b) to a cellular telephone number; (c) using the same
> or a similar recorded message used in calling Plaintiff; and (d) at any
> time in the period that begins four years before the date of the filing of
> this Complaint to trial.

48.     Excluded from the Class are the Defendant, and any entities in which

the Defendant has a controlling interest, the Defendants' agents and employees,

any judge to whom this action is assigned and any member of such judge's staff

and immediate family.

49.     The class as defined above is identifiable through phone records and

phone number databases.

50.     The potential class members number is likely at least in the thousands,

since automated telemarketing campaigns make calls to hundreds or thousands of

individual a day. Individual joinder of these persons is impracticable.

11

51.     Plaintiff Scofield is a member of the class.

52.     There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

      a.     Whether Blitz Services made the calls at issue with a pre-recorded message as that term is defined by the TCPA;

      b.     Whether Step Up Mortgage is vicariously liable for Blitz Services telemarketing conduct;

      c.     Whether Defendants placed calls without obtaining the recipients' prior consent for the call; and

      d.     Whether the Plaintiff and the class members are entitled to statutory damages because of Defendants' actions.

53.     Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the Class arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

54.     Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

55.    Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

56.    Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

57.    The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

58.    Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

## Count One:
## Violation of the TCPA's Prohibition Against Automated Telemarketing

59.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

60.     The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the  telephone numbers of Plaintiff and members of the Class using a pre-recorded message.

61.     As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using a pre-recorded message, pursuant to 47 U.S.C. § 227(b)(3)(B).

62.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls, except for

emergency purposes, to any cellular telephone numbers using a pre-recorded message in the future.

63.    The Defendants' violations were negligent and/or knowing.

## Relief Sought

WHEREFORE, for himself and all class members, Plaintiff requests the following relief:

A.    Injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls, except for emergency purposes, to any cellular telephone numbers using a pre-recorded message in the future.

B.    Because of Defendants' violations of the TCPA, Plaintiff seeks for himself and the other putative Class members $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

C.    An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiff is proper representatives of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

D.     Such other relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Dated: February 21, 2022        PLAINTIFF, on behalf of himself
                                and others similarly situated,


                                */s/ Anthony Paronich*
                                Anthony Paronich
                                Email:  anthony@paronichlaw.com
                                PARONICH LAW, P.C.
                                350 Lincoln Street, Suite 2400
                                Hingham, MA 02043
                                Telephone:  (617) 485-0018
                                Facsimile:  (508) 318-8100

                                *Attorneys for Plaintiff*